UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 1:23-cr-442 (CJN) |
| | : | |
| **CYRUS WHEELER,** | : | |
| | : | |
| **Defendant.** | : | |

### UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing with respect to defendant Cyrus Wheeler. For the reasons herein, the United States requests that the Court sentence the defendant to a period of fifteen (15) months of incarceration, to be followed by three (3) years of supervised release. The United States is not requesting any fines or restitution in this case, other than required court costs. In support of this sentence, the United States respectfully submits the following.

### FACTUAL AND PROCEDURAL BACKGROUND

In and around October 2022, law enforcement began investigating a narcotics trafficker, identified as Khalil Felder, and his drug sales on and around the 100 block of Yuma Street Southeast, Washington D.C. (hereinafter, the "Yuma Block"). The area functioned as an open-air drug market, with narcotics dealers serving clients who walked up to purchase narcotics. Some dealers, routinely seen by law enforcement operating around the Yuma Block, appeared to be working together to sell drugs, while other dealers appeared to come and go at various times. Through the course of the investigation, law enforcement identified several of the narcotics dealers, including two key individuals who were working together to sell drugs on and around the

Yuma Block: Khalil Felder and the defendant.[1]

Specifically, in late October 2022, an undercover officer ("UC") conducted a controlled purchase of fifty zips of fentanyl directly from Felder on the Yuma Block. Although law enforcement observed Felder participating directly in other such street level narcotics sales, or "hand to hands," law enforcement also uncovered evidence that Felder was involved in the distribution of significant quantities of narcotics and that he was supplying others with narcotics for redistribution. This evidence culminated in the execution of a search warrant at Felder's residence in December 2023, where law enforcement recovered, among other things, approximately 3 kilograms of fentanyl and two loaded firearms. During the course of the investigation, law enforcement also identified three of the individuals who were selling narcotics on behalf of Felder: the defendant, Carroll Edelen, and Calvin Wright, with the defendant serving as Felder's primary point man for narcotics trafficking on the Yuma Block.

From at least January 2023 until July 2023, when Felder began working with Edelen and Wright at Oxon Run Park, law enforcement observed the defendant on the Yuma Block engaging in suspected narcotics sales, or "hand to hands," on a near-daily basis. Law enforcement also observed Felder meeting with Wheeler on the Yuma Block, including in exchanges consistent with Felder supplying the defendant with drugs for redistribution. During the investigation, law enforcement also learned that Felder provided Wheeler with a phone to use when communicating with drug users and arranging narcotics sales.

On or about January 24, 2024, Felder, the defendant, Edelen and Wright were charged in a

---

[1] During the investigation, law enforcement also identified other individuals who were selling narcotics in and around the Yuma Block. A number of these individuals have also been charged with narcotics-related offenses in a series of related criminal cases, including: 1) Alphonso Murray, Marquete Murray, Christian Simms, and Kevin Penn (criminal case 23-cr-419); 2) Leonard Short (criminal case 24-cr-122); and 3) James Martin (criminal case 24-cr-99). With the exception of Penn, who remains in fugitive status, those defendants have all pled guilty and been sentenced.

superseding indictment with, *inter alia*, Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841 (a)(1), 841(b)(1)(C), and 846.  Since the defendant's arrest on January 25, 2024, he has remained detained.  On July 11, 2024, pursuant to a plea agreement [ECF No. 44], the defendant pled guilty to Count One of the Superseding Indictment, charging Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841 (a)(1), 841(b)(1)(C), and 846.  Sentencing is currently scheduled for October 9, 2024.

## DISCUSSION AND RECOMMENDATION

### I. Generally Applicable Legal Principles

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a).  See United States v. Gall, 128 S. Ct. 586, 596 (2007).  The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
> (i) issued by the Sentencing Commission ...;

>  and
>  (ii) that, . . . are in effect on the date the defendant is sentenced; ...
>
> (5) any pertinent policy statement –
>  (A) issued by the Sentencing Commission ... and
>  (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

## II. Defendant's Sentencing Guidelines Calculation

### A. Total Offense Level

The base offense level for a violation of 21 U.S.C. § 846 is governed by U.S.S.G. § 2D1.1. Because the defendant is accountable for less than four grams of fentanyl as the total amount involved in his relevant criminal conduct, the base offense level is 12. *See* U.S.S.G. § 2D1.1(a)(5) and (c)(14). The defendant has also accepted responsibility for the offense, warranting a two-level reduction, pursuant to U.S.S.G. § 3E1.1(a). The total adjusted offense level is therefore 10.

### B. Criminal History Category

The Presentence Investigation Report ("PSR") [ECF No. 51] writer calculates the defendant to have a total of 7 criminal history points (placing him in Criminal History Category IV). *See* PSR ¶ 72.

### C. Sentencing Guideline Range

With a total offense level of 10 and a Criminal History that falls in Category IV, the defendant's guidelines range is 15-21 months of incarceration. The guidelines range for supervised release is 3 years. *See* U.S.S.G. § 5D1.2(a)(1) and (c). The guidelines range for a fine is $5,500 to $1,000,000. *See* U.S.S.J.G. § 5E1.2.

**III.     Sentencing Recommendation**

As stated above, the United States requests a sentence of fifteen (15) months of incarceration, to be followed by three (3) years of supervised release.

**A.     The Nature of the Offense**

The defendant's willing participation in the distribution of a highly dangerous drug – fentanyl – cannot be minimized, particularly given the evidence that he served as Felder's primary redistributor on the Yuma Block and was involved in near-daily hand to hand transactions during the relevant time period. Indeed, unlike some others who have previously pled guilty and been sentenced in the related cases, the evidence indicates that the defendant regularly sold narcotics to others, without regard for the subsequent harm inflicted on those users and the impact on the community, and that he only ceased when Felder instead began distributing at Oxon Run Park, using Edelen and Wright as his redistributors. The United States recognizes, however, that the defendant's participation in the offense was only as a street-level dealer, that he sold for Felder for a limited time (approximately January 2023 – July 2023), and that his involvement in the offense appears to have been motivated by his own addiction. Nor is there any evidence that the defendant had access to, or trafficked, significant quantities of narcotics.

**B.     The History and Characteristics of the Defendant**

First, it should be noted that the defendant indicated early on that he wished to accept responsibility for his conduct in the instant case; indeed, he is the first and *only* defendant in this case to have pled guilty. His willingness to do so, notwithstanding the fact that he is also the only defendant in this (or the related cases) who was not directly involved in any controlled purchase involving law enforcement, should be commended.

The defendant's criminal history, however, is lengthy, with 19 prior convictions ranging

from narcotics offenses to property-related crimes. He has other arrests spanning most of his life; indeed, he is currently subject to a detainer as part of an unrelated firearms case in Prince George's County, Maryland. The United States recognizes, however, the apparent correlation between his criminal history and his lengthy history of substance abuse, as well as the impact of his other health issues, as detailed in the PSR. *See* PSR ¶ 122 – 123.

### C. The Need for the Sentence Imposed

Given the defendant's history and characteristics and the nature of the conduct in this case, the United States respectfully requests a sentence of fifteen (15) months of incarceration, to be followed by three (3) years of supervised release. Notwithstanding his health issues and documented record of addiction, the defendant served as Felder's primary narcotics redistributor on the Yuma Block, feeding the addiction of others to support his own. The United States recognizes, however, the impact of that addiction on his conduct in the instant case (and his criminal history). The United States also recognizes his willingness to accept responsibility for that conduct in the instant case, as demonstrated by his guilty plea.

A sentence at the low end of the guidelines would be sufficient to promote respect for the law, while also allowing the defendant time to receive necessary substance abuse and other treatment. Moreover, the United States respectfully submits that a lengthy period of supervised release – 36 months – is also appropriate and necessary to facilitate the defendant's re-entry into the community upon his release from imprisonment, given his history of relapse.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

By:

        */s/ Andrea Duvall*
        Andrea Duvall
        AR Bar 2013114
        Assistant United States Attorney
        U.S. Attorney's Office
        Violence Reduction & Trafficking Offenses
        601 D Street, NW
        Washington, D.C. 20530
        (202) 252- 2408
        andrea.duvall@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that on October 2, 2024, a copy of the Government's Sentencing Memorandum was submitted via CM/ECF, which will transmit to counsel for defendant.

                                                */s/ Andrea Duvall*
                                                Assistant U.S. Attorney